UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | | |
|---|---|---|
| **TOWER BANK & TRUST COMPANY, as** | ) | |
| **Successor Trustee of the William A. Darling** | ) | |
| **2000 Revocable Trust,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | CAUSE NO. 1:06-CV-00156 |
| | ) | |
| **BANK ONE, N.A., in its corporate capacity,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**OPINION AND ORDER**

In October 2003, Defendant Bank One, N.A., now known as JP Morgan Chase Bank, N.A. ("Bank One"), offered and sold certain securities to the William A. Darling 2000 Revocable Trust (the "Trust"). (First Am. Compl. ¶ 2, Ex. A, Ex. B; Def.'s Mot. to Dismiss at 1.) After experiencing a purported loss in excess of two million dollars on the investment, the Trust filed the instant action against Bank One, contending that Bank One made untrue statements of material fact or omitted a material fact in the offer and sale of the securities to the Trust, thereby violating Section 12(2) of the Indiana Securities Act, Ind. Code §§ 23-2-1-1 to -27 ("ISA").[1] (First Am. Compl. ¶¶ 2, 14, 25.)

Bank One now moves to dismiss the instant action pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief can be granted. (Docket # 14.)  After considering the motion and the relevant law, Bank One's motion will be

---

[1] The Court has jurisdiction based on diversity, *see* 28 U.S.C. § 1332, with all parties consenting to the undersigned Magistrate Judge, *see* 28 U.S.C. § 636(c).
   The Trust also initially asserted claims under Sections 3 and 8 of the ISA, but has since abandoned these claims. (Pl.'s Resp. to Def.'s Mot. to Dismiss at 1-2.)

DENIED, and the case will proceed.

## I. FACTUAL AND PROCEDURAL BACKGROUND[2]

William A. Darling established the Trust in 2000 and funded it with 63,184 shares of Exxon stock and 37,056 shares of British Petroleum ("BP") stock. (First Am. Compl. ¶¶ 3, 8, 10.)  Darling named Bank One Trust Company, N.A. (the "Trustee"), as the trustee of the Trust. (First Am. Compl. ¶ 10.)

In November 2000, Bank One offered and sold to the Trust a security known as a "European Collar" with respect to the Trust's Exxon and BP stock (the "2000 European Collar").[3] (First Am. Compl. ¶ 10.)  Incident to the 2000 European Collar transaction, William Darling, in his capacity as grantor of the Trust, executed a written consent to the transaction between Bank One, as seller, and the Trust, as purchaser, acknowledging the existence of a potential conflict of interest due to the affiliation of Bank One and the Trustee (the "Letter Agreement"). (First Am. Compl. ¶ 10.)  The 2000 European Collar expired two years later, resulting in a gain to the Trust. (First Am. Compl. ¶ 11.)

In the fall of 2003, Bank One offered and sold to the Trust a second "European Collar" with respect to the Exxon and BP stock (the "2003 European Collar"). (First Am. Compl. ¶ 14.) In order to effectuate this transaction, Bank One sought the consent of William Darling's

---

[2] For purposes of its review of Bank One's motion to dismiss, the Court assumes the truth of all well-pled allegations and draws all reasonable inferences in the light most favorable to the Trust. *Pearman v. Norfolk & W. Ry. Co.*, 939 F.2d 521, 522 (7th Cir. 1991); *Norris v. Wirtz*, 719 F.2d 256, 258 (7th Cir. 1983).

[3] In its complaint, the Trust describes a "European Collar" as a "contractual arrangement designed to hedge against loss on securities due to a decline in the market price of such securities." (First Am. Compl. ¶ 13.)  The Trust explains that a "collar" is created by the owner simultaneously selling a "call" and purchasing a "put" on the securities at a designated strike price, effectively limiting potential declines and increases in the market price of the securities. (First Am. Compl. ¶ 13.)  Particularly, a "European Collar" restricts, in effect, the ability of the owner to sell the securities in the market prior to the expiration date of the "put" and "call" in the collar. (First Am. Compl. ¶ 18.)

children, Nancy Darling and Philip Darling, to whom he had granted a power of attorney ("POA") due to his failing health. (First Am. Compl. ¶¶ 12, 15.) Nancy Darling, in her capacity as POA, executed a "confirmation" of the purchase and sale of the 2003 European Collar; additionally, Philip Darling, in his capacity as POA, executed an "amended confirmation" of the transaction, along with an officer of the Trustee. (First Am. Compl. Exs. A, B.)

William Darling died on July 18, 2005, leaving Nancy and Philip as the sole beneficiaries of the Trust. (First Am. Compl. ¶¶ 6, 22.) Following his death, the 2003 European Collar was subjected to an early termination, resulting in a purported loss to the Trust in excess of two million dollars. (First Am. Compl. ¶¶ 22, 23.)

On March 28, 2006, Tower Bank & Trust Company, as successor trustee of the Trust, filed the instant action in Allen Superior Court, asserting that Bank One had violated the anti-fraud provisions of the ISA by making untrue statements of material fact, or by omitting to state a material fact, to Nancy and/or Philip and to the Trust in connection with the offer and sale of the 2003 European Collar. (Docket # 1.) Bank One removed the action to this Court on April 17, 2006. (Docket # 2.)

On May 31, 2006, Bank One filed a motion to dismiss the action pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief can be granted. (Docket # 14.) In its motion, Bank One contends that the Trust's claim fails as a matter of law because under the Trust Agreement the grantor of the Trust delegated his entire authority to make investment decisions to the Trustee, and thus his POAs had no investment decision to make in connection with the 2003 European Collar transaction. (Br. in Supp. of Def.'s Mot. to Dismiss.) In filing its motion, Bank One relied upon and attached to its motion

two documents filed by the Trust in a separate action pending in state court against the Trustee: (1) Petition to Docket Trust and Compel Accounting, which included a copy of the trust agreement that created the Trust (the "Trust Agreement"); and (2) Preliminary Objections to Previous Trustee's Statement of Accounts and Constructive Fraud Claim, which included a copy of the Letter Agreement. (Def.'s Mot. to Dismiss Exs. A, B.)

## II. STANDARD OF REVIEW

A complaint should not be dismissed for failure to state a claim unless it appears that the plaintiff can prove no set of facts which would support his claim for relief. *Kelley v. Crosfield Catalysts*, 135 F.3d 1202, 1205 (7th Cir. 1998). In determining the propriety of dismissal under Rule 12(b)(6), the court must "accept as true all well-pled factual allegations in the complaint and draw all reasonable inferences therefrom in favor of the plaintiff." *Perkins v. Silverstein*, 939 F.2d 463, 466 (7th Cir. 1991). The purpose of the motion to dismiss is to test the legal sufficiency of the complaint and not to decide the merits. *Triad Assoc., Inc. v. Chicago Hous. Auth.*, 892 F.2d 583, 586 (7th Cir. 1989), *abrogated on other grounds*, *Bd. of County Comm'rs, Waubunsee County, Kan. v. Umbehr*, 518 U.S. 668 (1996). "If it appears beyond doubt that plaintiffs can prove any set of facts consistent with the allegations in the complaint which would entitle them to relief, dismissal is inappropriate." *Perkins*, 939 F.2d at 466.

## III. DISCUSSION

The Trust claims that Bank One violated Section 12(2) of the ISA in connection with the offer and sale of the 2003 European Collar to the Trust. Section 12 of the ISA provides:

> It is unlawful for any person *in connection with the offer, sale or purchase of any security*, either directly or indirectly
> . . .
> (2) to make any untrue statements of a material fact or to omit to state a

4

> material fact necessary in order to make the statements made in light of the circumstances under which they are made, not misleading . . . .

Ind. Code § 23-2-1-12 (emphasis added).

In filing its motion to dismiss, Bank One does not, in essence, dispute on its face the adequacy of the Trust's pleading of its claim under the ISA.  Rather, it produces the Trust Agreement, contending that the Trust's claim fails as a matter of law because under the terms of the Trust Agreement the grantor, William Darling, delegated all investment authority to the Trustee. (*See* Def.'s Br. in Supp. of Def.'s Mot. to Dismiss at 11-16.)  As Bank One's argument goes, any allegedly untrue statement or omission of material fact concerning the 2003 European Collar made by Bank One to Nancy Darling or Philip Darling, as POAs of William, simply could not have been "in connection with" the purchase or sale of a security, because William had relinquished his investment authority to the Trustee and thus had *no* investment decision to make with respect to the transaction. (*See* Def.'s Br. in Supp. of Def.'s Mot. to Dismiss at 11-16.)

In asserting its motion, Bank One relies upon *O'Brien v. Continental Illinois National Bank and Trust Co. of Chicago*, 593 F.2d 54 (7th Cir. 1979), which involved a Section 10(b) claim under the Securities Exchange Act of 1934.[4]  In *O'Brien*, the Seventh Circuit Court of Appeals held that an investor who delegated to his securities broker his entire authority to make investment decisions could not bring a Section 10(b) claim against the broker because, having relinquished all authority to make investment decisions, he had made no decision "in connection with the purchase . . . of a security." 493 F.2d 54.  Here, Bank One, relying upon the Trust

---

[4] While O'Brien is a case involving an alleged violation of Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), Indiana courts look to decisions of federal courts when addressing issues under the ISA that have not been considered by Indiana's appellate courts. *See*, *e.g.*, *Hamilton County Dep't of Pub. Welfare v. Smith*, 567 N.E.2d 165, 171 n.2 (Ind. Ct. App. 1991).

Agreement, contends that, like the plaintiff in *O'Brien*, the grantor of the Trust relinquished his authority to make investment decisions to the Trustee, and thus the POAs of the grantor had no investment decision to make in regard to the 2003 European Collar, causing the purported Section 12(2) violation to fail as a matter of law.

The Trust, however, contends that in attaching the Trust Agreement and the Letter Agreement (documents not attached to the Trust's complaint) to its motion to dismiss, Bank One introduced documents that are "outside the pleadings," and thus the Court should not consider them in ruling on the motion.[5] *Lincoln Nat'l Life Ins. Co. v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 9 F. Supp. 2d 994, 997 (N.D. Ind. 1998). While the parties spend a great deal of time debating this point in their briefs, it ultimately is not pivotal, as Bank One's motion to dismiss fails *whether or not* the Trust Agreement and the Letter Agreement are considered.

To explain, if the Court excludes the Trust Agreement containing the delegation provision and the Letter Agreement, the sole grounds upon which Bank One advances its motion to dismiss immediately evaporates. The Trust has indeed sufficiently pled a Section 12(2) violation in its complaint under notice pleading requirements. *See Scott v. City of Chicago*, 195

---

[5] When additional evidence is attached to a motion to dismiss, "'the court must either convert the 12(b)(6) motion into a motion for summary judgment under Rule 56 . . . or exclude the documents attached to the motion to dismiss and continue under Rule 12.'" *188 LLC v. Trinity Indus., Inc.*, 300 F.3d 730, 735 (7th Cir. 2002) (quoting *Levenstein v. Salafsky*, 164 F.3d 345, 347 (7th Cir. 1998)). There is, however, a narrow exception to this general rule: "'[D]ocuments attached to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to his claim. Such documents may be considered by a district court in ruling on the motion to dismiss.'" *188 LLC*, 300 F.3d at 735 (quoting *Wright v. Assoc. Ins. Cos. Inc.*, 29 F.3d 1244, 1248 (7th Cir. 1994)).

Because Bank One's motion to dismiss fails whether or not the Trust Agreement and the Letter Agreement are considered, the Court need not opine at length with respect to whether the Trust Agreement and the Letter Agreement fit within this narrow exception. Nonetheless, for purposes of the record, because the Trust refers to both documents in its complaint, (*see*, *e.g.*, First Am. Compl. ¶¶ 2, 3, 4, 8, 10, 25), and because the documents appear integral to the Trust's claim concerning the 2003 European Collar transaction, the Court concludes that the documents are part of the pleadings, making it unnecessary to convert Bank One's motion to a motion for summary judgment. *See 188 LLC*, 300 F.3d at 735.

F.3d 950, 951 (7th Cir. 1999) (stating that a complaint need only set out a "short and plain statement of the claim that will provide the defendant with fair notice of the claim").

On the other hand, if the Trust Agreement and the Letter Agreement are considered, Bank One's motion to dismiss, while perhaps having more teeth upon first look, ultimately fails upon closer examination.  Though the grantor of the Trust, like the plaintiff in *O'Brien*, delegated his authority to make investment decisions to the Trustee under Section 4 of the Trust Agreement,[6] Bank One specifically *sought out* the consent of Nancy and Philip in order to effectuate the purchase and sale of the 2003 European Collar, indicating, or at least raising the inference, that their approval was necessary with respect to the proposed investment.[7]  Ultimately, Nancy Darling, in her capacity as POA, executed the first confirmation of the purchase, and Philip Darling, in his capacity as POA, executed an amended one.  Taking these facts in the light most favorable to the plaintiff, *see Pearman*, 939 F.2d at 522, they create a reasonable inference that  this particular 2003 European Collar transaction might not have occurred, most likely due to the self-dealing nature of the transaction, if the POAs of the grantor of the Trust had withheld their consent.

As a result, more appropriate guidance is found in *Norris v. Wirtz*, 719 F.2d 256 (7th Cir. 1983), *cert. denied* 466 U.S. 929 (1984), rather than in *O'Brien*.  In *Norris*, the Seventh Circuit

---

[6] Section 4.1.1 of the Trust Agreement states: "The trustee is authorized to invest and reinvest the property of the trust in bonds, stocks, mortgages, notes or other property of any kind, real or personal, and to sell at public or private sale, exchange, transfer and otherwise deal with the trust property and any reinvestment thereof from time to time for such price and upon such terms as the trustee considers appropriate." (Def.'s Mot. to Dismiss Ex. A.)

[7] The Trust's theory appears to be that Bank One made misrepresentations "in order to procure the consent and approval" of Nancy and Philip, (Pl.'s Resp. to Def.'s Mot. to Dismiss at 9), although the actual "confirmations" do not expressly employ those terms.  Moreover, although the Trustee arguably had complete discretion concerning investments, *see* note 6 *supra*, William, and presumably his POAs, had the authority under Section 4.4 of the Trust Agreement to remove the Trustee and select a successor.  Accordingly, it is possible that both Bank One and the Trustee thought it essential to obtain Nancy and Philip's "consent and approval" to the transaction.

denied the defendant's motion to dismiss the plaintiff's Section 10(b) claim because, though the testator's will that established the terms of the trust delegated the authority to make all investment decisions to the trustee, the will also stated that the trust's beneficiary had the power to approve, in essence, any self-dealing transactions by the trustee. *Id.* at 260.  The Seventh Circuit concluded that, despite the delegation of the investment authority under the terms of the trust, the beneficiary indeed "had authority to make the investment decisions involving the securities sales in which the alleged misrepresentations were made." *Id.*

Though a will provision is not in play in the instant case, Bank One *sought out* the consent of the grantor's POAs to the proposed transaction, and the POAs each executed a written confirmation of the sale.  Based on this record, it cannot be definitively concluded, at least at this stage of the proceedings, that the POAs of the Trust had *no* investment decision to make with respect to the 2003 European Collar. *See id.* at 258. ("At the present stage, involving . . . a decision to dismiss the complaint, the allegations in the complaint should be read liberally and the plaintiff should be entitled to the benefit of *all* inferences.") (emphasis added).  As a result, Bank One's motion to dismiss will be DENIED.

## IV. CONCLUSION

For the reasons stated herein, Defendant's motion to dismiss (Docket # 14) is DENIED.  The preliminary pretrial conference is re-set for August 30, 2006, at 10:00 a.m.

SO ORDERED.

Enter for this 26th day of July, 2006.

S/Roger B. Cosbey<br>
Roger B. Cosbey,<br>
United States Magistrate Judge